UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID ANTONIO PEREZ-ESCOBAR,<br><br>Petitioner,<br><br>v.<br><br>ANTONE MONIZ, *et al.*,<br><br>Respondents. | No. 25-cv-11781-PBS |

**RESPONDENTS' OPPOSITION TO**
**PETITION FOR WRIT OF HABEAS CORPUS (Doc. No. 1)**

The Court should deny Petitioner David Antonio Perez-Escobar's Petition for a Writ of Habeas Corpus. Petitioner challenges his immigration detention and seeks immediate release from it. Petition for Writ of Habeas Corpus (June 18, 2025), Doc. No. 1, ¶¶ 1-3 ("Pet."). But Petitioner's detention is statutorily authorized and constitutional where, as here, United States Immigration and Customs Enforcement ("ICE") removed Petitioner from the United States in 2008, and he returned thereafter without admission or parole after inspection. Ex. 1, Chan Decl. (June 27, 2025) ¶¶ 12-13 ("Chan Decl."); 8 U.S.C. § 1231(a)(6).

**I.     BACKGROUND**

   **A.     Legal Background**

An individual—like Petitioner—who has been removed from the United States pursuant to a final order of removal, and who thereafter re-enters the United States illegally, is subject to a statutory provision that allows immigration authorities to reinstate the original removal order and proceed with removal again. 8 U.S.C. § 1231(a)(5); 8 C.F.R. § 241.8; *Johnson v. Guzman Chavez,* 594 U.S. 523, 529-30 (2021). In *Guzman Chavez*, the Supreme Court held that the statutory authority to detain and remove an individual with a reinstated final order of removal is

found within 8 U.S.C. § 1231. 594 U.S. at 533-34. Section 1231(a)(1)(A) directs immigration authorities to remove an individual with a final order of removal within a period of 90 days, known as the "removal period." During the removal period, § 1231(a)(2) commands that ICE "shall detain" the final-order alien.

If, however, the removal period has expired, ICE either can release an individual pursuant to an Order of Supervision as directed by § 1231(a)(3), or continue detention under § 1231(a)(6). Per § 1231(a)(6), ICE may continue detention beyond the removal period for three categories of individuals:

- Those who are inadmissible to the United States pursuant to 8 U.S.C. § 1182;
- Those who are subject to certain grounds of removability from the United States pursuant to 8 U.S.C. § 1227; or
- Those whom immigration authorities have determined to be a risk to the community or "unlikely to comply with the order of removal."

*See also Guzman Chavez*, 594 U.S. at 528-29.

To be sure, in *Zadvydas v. Davis*, the Supreme Court held that the government cannot detain an individual "indefinitely" beyond the 90-day removal period. 533 U.S. 678, 682 (2001). The Supreme Court "read an implicit limitation into the statute . . . in light of the Constitution's demands" and held that § 1231(a)(6), "limits an alien's post-removal period detention to a period reasonably necessary to bring about the alien's removal from the United States." *Id.* at 689. The Supreme Court held that post-removal-period detention for six months is "presumptively reasonable." *Id.* at 701. Beyond six months, an individual must show there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future[.]" *Id.* at 701. If the individual does so, the burden then shifts to the government to produce "evidence sufficient to rebut that showing." *Id.*

**B.     The Petition**

Petitioner alleges that he "is a Salvadoran national who the U.S. government paroled into the United States on an Order of Supervision ["OSUP"] on May 18, 2019." Pet. ¶ 1; Ex. 1, Chan Decl. ¶ 7. He has "two young children, one of whom is a US citizen with medical needs." *Id*. ¶ 6. Petitioner lives in Somerville with his "long-term partner and children," and recently worked "in the service industry at a local restaurant." *Id*.

"On May 18, 2019, [Petitioner] presented at the southern border" of the United States with his partner and child. *Id*. ¶ 8. He alleges that he was "fleeing violence and death threats[.]" *Id*. Petitioner further alleges that U.S. Customs and Border Protection ("CBP") and the Department of Homeland Security ("DHS") released him into the United States on OSUP, and that the "US government" gave him "Employment Authorization." *Id*.

"Since 2019, [Petitioner] has complied with the terms of his release to the interior of the United States" and has "reported to all of his check-ins with ICE." *Id*. ¶ 9. "On June 18, 2025, while complying with the terms of his [OSUP], ICE arrested and detained [Petitioner] with" (according to Petitioner) "no articulation of the basis for his detention." *Id*. ¶ 10. Petitioner awaits "a Reasonable Fear Interview" to "pursue his asylum claim in the United States," but DHS has not arranged it. *Id*. ¶¶ 1, 10. Separately, Petitioner's "spouse and child have a pending asylum application before the Immigration Court." *Id*. ¶ 7.

The Petition asserts a single cause of action challenging Petitioner's arrest and detention as violating the Fifth Amendment's due process clause. *Id*. at 3. Petitioner claims that his arrest and detention were "without cause and in violation of his constitutional rights to due process of law," but does not otherwise allege why his arrest and detention are unlawful. *Id*. Petitioner asks the Court to "[d]eclare that Petitioner's detention violates the Due Process Clause of the

Fifth Amendment," and "[i]ssue a Writ of Habeas Corpus ordering Respondents to release Petitioner immediately." *Id*. at 4.

        C.        **ICE Declaration**

The Petition does not address Petitioner's immigration history predating 2019. In fact, more than 20 years ago, on June 19, 2002, CBP "encountered the Petitioner at the southwest border of the United States in the area of Brownsville, Texas after he entered the United States without admission or parole after inspection." Ex. 1, Chan Decl. ¶ 8. The government filed a Notice to Appear and "Petitioner entered removal proceedings." *Id.* ¶ 9. On March 19, 2003, an immigration judge ordered Petitioner removed *in absentia* after Petitioner failed to appear at a hearing. *Id*. ¶ 10.

Five years later, on July 15, 2008, ICE detained Petitioner after the Everett Police Department arrested him. *Id*. ¶ 11. One month later, on August 19, 2008, "ICE removed the Petitioner from the United States to El Salvador." *Id*. ¶ 12.

Nearly 11 years later, on May 15, 2019, "CBP encountered the Petitioner in the area of El Paso, Texas after he entered the United States without admission or parole after inspection." *Id*. ¶ 13. Petitioner "was processed as a Reinstatement of Removal, Form I-871." *Id*. On May 18, 2019, ICE released Petitioner on an OSUP. *Id*. ¶ 14. Six weeks later, on July 1, 2019, "ICE forwarded the Petitioner's file to the Boston Asylum Office, a division of United States Citizenship and Immigration Services ("USCIS"), for adjudication of the Petitioner's reasonable fear claim," but "Petitioner has not completed a reasonable fear interview." *Id*. ¶ 15.

Six years later, on June 18, 2025, "ICE detained the Petitioner as a final order of removal." *Id*. ¶¶ 5, 16. "Petitioner is detained at the Plymouth County Correctional Facility in Plymouth, Massachusetts" pursuant to 8 U.S.C. § 1231(a). *Id*. ¶¶ 6, 19.

The next day, June 19, 2025, "ICE ERO Boston's Acting Field Office Director issued a written revocation notice explaining that ICE was revoking [Petitioner's] release pursuant to 8 C.F.R. § 241.4 because it had determined that Petitioner could be removed from the United States pursuant to his final order of removal." *Id*. ¶ 17. "According to the revocation notice, 'ICE has determined the purpose of [Petitioner's] release has been served and it is appropriate to enforce the removal order.'" *Id*. Moreover, "ICE has determined there was a significant likelihood of removal in the reasonably foreseeable future." *Id*. ICE has served Petitioner "and his attorney with an Order of Supervision revocation letter." *Id*. ICE likewise "conducted an informal interview" on June 19, 2025. *Id*. ¶ 18.

## II.     LEGAL STANDARD

It is axiomatic that "[t]he district courts of the United States . . . are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005) (internal quotations omitted). Section 2241 of Title 28 of the United States Code provides district courts with jurisdiction to hear federal habeas petitions. It is Petitioner's burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States. *See* 28 U.S.C. § 2241(c)(3); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## III.    ARGUMENT

### A.     Petitioner is Lawfully Detained Pursuant to 8 U.S.C. § 1231

First, Petitioner's detention is statutorily permissible. *See Guzman Chavez,* 594 U.S. at 533-34. Because Petitioner's prior order of removal was final in 2008, Petitioner is now outside

5

the 90-day removal period during which the government "shall detain" him.  However, 8 U.S.C. § 1231(a)(6) allows ICE to detain Petitioner because he is inadmissible to the United States under at least two provisions of 8 U.S.C. § 1182.  First, § 1182(a)(6)(A)(i) applies to individuals, such as Petitioner, who are "present in the United States without being admitted or paroled."  Second, § 1182(a)(9)(C) renders inadmissible individuals, such as Petitioner, who have been ordered removed from the United States, and who then re-enter without being admitted.  *See Quezada-Martinez v. Moniz*, 722 F. Supp. 3d 7, 10-11 (D. Mass. 2024) (holding that a previously-removed individual was detained permissibly under § 1231(a)(6)).

Moreover, the Supreme Court has held that § 1231(a)(6) does not contemplate bond hearings.  *Johnson v. Arteaga-Martinez*, 596 U.S. 573, 580-81 (2022).  The Supreme Court explained that § 1231(a)(6)'s plain text "says nothing about bond hearings before immigration judges or burdens of proof" and therefore held no statutory requirement to conduct bond hearings exists.  *Id.* at 581.  As such, Petitioner cannot claim that he is statutorily entitled to release or a bond hearing.

This is so even if Petitioner is found to have a reasonable fear of return to his home country.  If an asylum official deems Petitioner's fear reasonable, then Petitioner is entitled to apply for withholding of removal and protection under the Convention against Torture in Immigration Court.  *See generally* 8 C.F.R. § 208.31.  Nevertheless, § 1231 still would govern Petitioner's detention during withholding-only proceedings.  *E.g.*, *Guzman Chavez*, 594 U.S. at 526; *Quezada-Martinez*, 722 F. Supp. 3d at 11 ("The Supreme Court has maintained that [8 U.S.C. § 1231(a)(6)] applies to previously removed non-citizens who subsequently reenter the United States and apply for asylum based on a fear that they would be persecuted or tortured if returned to their countries of origin.").

B.     **Petitioner's Statutorily-Authorized Detention is Constitutional**

Not only is Petitioner's detention valid under statute, it also is constitutional. Generally, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). The flight risk of individuals, like Petitioner, with a final order of removal and a history of prior removal and illegal re-entry is self-evident because such individuals "have demonstrated a willingness to violate the terms of a removal order, and they therefore may be less likely to comply with the reinstated order." *Guzman Chavez*, 594 U.S. at 544.

Moreover, Petitioner's due process claim fails because detention for six months in this context is "presumptively reasonable," *Zadvydas*, 533 U.S. at 701, and Petitioner has been in ICE custody only since June 18, 2025. *See Rodriguez-Guardado v. Smith,* 271 F. Supp. 3d 331, 335 (D. Mass. 2017) ("As petitioner has been detained for approximately two months as of this date, the length of his detention does not offend due process."); *Julce v. Smith*, No. 18-cv-10163-FDS, 2018 WL 1083734, at *5 (D. Mass. Feb. 27, 2018) (deeming a habeas petition "premature at best" because it was filed after "only three months" of post-final-order detention). And even if Petitioner were in detention beyond six months, he has not provided "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," as would be required for a viable due process claim. *See Zadvydas*, 533 U.S. at 701.

In fact, the First Circuit recently determined that an individual detained for more than four years as he pursued withholding-only proceedings could not make the initial showing that his detention violated the *Zadvydas* framework because his "situation is readily distinguishable from *Zadvydas*." *G.P. v. Garland*, 103 F.4th 898, 901 (1st Cir. 2024). Unlike the two individuals in the *Zadvydas* case who faced potentially permanent detention because of being

7

stateless, the First Circuit found that G.P.'s detention was finite because "if he is ultimately denied relief, the government will be able to move forward with removing him" from the United States. *Id.* at 902.

The First Circuit noted that G.P. was "unable to provide any decision where a court ordered a noncitizen to be released under *Zadvydas* while removal or withholding-only proceedings remained pending before the agency." *Id.* at 903. The First Circuit refused to adopt any of the arguments made by G.P. to reach a contrary result and instead joined several other circuits to hold that he had, despite being detained for four years and with resolution of proceedings nowhere near imminent, "failed to show that there is no significant likelihood of his removal in the reasonably foreseeable future." *Id.* at 902-03 (internal quotations omitted) (citing *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024) and *Martinez v. Larose*, 968 F.3d 555 (6th Cir. 2020)).

Nor is there merit to any argument that Petitioner's detention is unconstitutional because ICE previously released him on an OSUP. To the contrary, if "the government in granting discretionary relief to an alien foreswears its ability to later detain an alien as part of the removal mechanism, then the government would have every incentive to abstain from any favorable exercise of discretion." *Rodriguez-Guardado,* 271 F. Supp. 3d at 335 n.6; *see also Hango v. U.S. Att'y Gen.*, No. 05-cv-2196, 2019 WL 1301981, at *2 (W.D. La. Mar. 21, 2019) (finding that a prior order of release due to inability to remove an individual "did not amount to a permanent injunction against future detention").

### C. ICE's Revocation of Petitioner's OSUP Comports with Applicable Regulations

Finally, the Petition fails to the extent it alleges that ICE's revocation of Petitioner's OSUP was unlawful. Even though 8 U.S.C. § 1231(a)(3) is silent as to revocation procedures for

8

an individual released pursuant to an OSUP, ICE has considerable discretion to revoke release under its regulations. *See* 8 C.F.R. § 241.4(l); *Leybinsky v. U.S. Immigr. & Customs Enf't,* 553 F. App'x 108, 110 (2d Cir. 2014) (summary order) (identifying ICE's "broad discretionary authority" to revoke release."). For example, ICE has regulatory authority to revoke release where, as here, ICE's Field Office Director determines that (1) "[t]he purposes of release have been served," (2) "[i]t is appropriate to enforce a removal order … against an alien," or (3) "[t]he conduct of the alien, *or any other circumstance,* indicates that release would no longer be appropriate." 8 C.F.R. § 241.4(l)(2)(i)-(iv) (emphasis added).

When ICE revokes release under 8 C.F.R. § 241.4(l), ICE must conduct an "informal interview" to advise the individual of the basis for revocation, and ICE also must serve the individual with a written notice of revocation. 8 C.F.R. § 241.4(l)(1). If ICE determines revocation remains appropriate after conducting the informal interview, then ICE must provide notice to the individual of a further custody review that "will ordinarily be expected to occur within approximately three months after release is revoked." 8 C.F.R. § 241.4(l)(3).

Here, ICE complied with its regulations governing revocation of Petitioner's release. ICE ERO Boston's Acting Field Office Director "issued a written revocation notice" on June 19, 2025, "explaining that ICE was revoking [Petitioner's] release pursuant to 8 C.F.R. § 241.4 because it had determined that Petitioner could be removed from the United States pursuant to his final order of removal." Ex. 1, Chan Decl. ¶ 17. The revocation notice explained that "'ICE has determined the purpose of [Petitioner's] release has been served and it is appropriate to enforce the removal order.'" *Id.*

Where, as here, ICE "determined that revocation was necessary to initiate [a petitioner's] removal[,] . . . [n]o further justification was required." *Doe v. Smith*, No. 18-cv-11363-FDS,

9

2018 WL 4696748, at *11 (D. Mass. Oct. 1, 2018).  As Chief Judge Saylor explained in *Doe*, the regulation does not require the Field Office Director "to make a formal determination that [petitioner's] revocation was in the public interest"; instead, the Field Office Director has "discretion to determine when revocation is appropriate."  *Id*.;[1] *see Alam v. Nielsen*, 312 F. Supp. 3d 574, 582 (S.D. Tex. 2018) (explaining that 8 C.F.R. § 241.4(l) provides a "short and straight path for immigrants whom the government is ready and able to remove").

ICE also conducted 8 C.F.R. § 241.4(l)'s required "informal interview" with Petitioner on June 19, 2025, to explain the basis for his revocation, and served him a written notice of revocation soon after his arrest.  *See* Ex. 1, Chan Decl. ¶ 18.  ICE was not required to provide advance notice of its intent to revoke Petitioner's release.  *See Doe*, 2018 WL 4696748, at *7 ("There is no requirement that ICE give any advance notice of the informal interview either to petitioner or her counsel."); *Reyes v. King,* No. 19-cv-8674, 2021 WL 3727614, at *10 (S.D.N.Y. Aug. 20, 2021) (holding that "the Due Process Clause of the Fifth Amendment does not entitle" petitioner to a pre-detention "hearing at [a] specified time"); *Moran v. U.S. Dep't of Homeland Sec*., No. 20-cv-00696, 2020 WL 6083445, at *9 (C.D. Cal. Aug. 21, 2020) (expressing skepticism about "the source of any due process right to advance notice of revocation of supervised release or other removal-related detention").

Nor does Petitioner allege that ICE otherwise violated any regulation regarding his revocation.  *See, e.g.*, *Doe*, 2018 WL 4696748, at *7 (dismissing a habeas claim where "there was no regulatory violation with respect to either the initial informal interview" or other custody reviews); *Perez v. Berg*, No. 24-cv-3251, 2025 WL 566884, at *7 (D. Minn. Jan. 6, 2025), *report*

---

[1] *But see Rombot v. Souza*, 296 F. Supp. 3d 383, 387-88 (D. Mass. 2017) (Saris, J.) (concluding that an individual's detention was unlawful where ICE violated "its own regulations" concerning revocation of release, including by relying "on an inapplicable regulation in revoking" the individual and by denying an "opportunity to be heard").

10

*and recommendation adopted by* 2025 WL 566321 (D. Minn. Feb. 20, 2025) (finding no due process violation "[a]bsent an indication that ICE failed to comply with its regulatory obligations in some more specific way").

And courts conclude routinely that ICE's compliance with its revocation regulations protects an individual's constitutional rights.  *See e.g., Moses v. Lynch*, No. 15-cv-4168, 2016 WL 2636352, at *4 (D. Minn. Apr. 12, 2016), *report and recommendation adopted by* 2016 WL 2596020 (D. Minn. May 5, 2016) ("When immigration officials reach continued-custody decisions for aliens who have been ordered removed according to the custody-review procedures established in the Code of Federal Regulations, such aliens receive the process that is constitutionally required."); *Portillo v. Decker*, No. 21-cv-9506, 2022 WL 826941, at *6 (S.D.N.Y. Mar. 18, 2022) (collecting cases deeming constitutional ICE's regulations concerning revocation).

## IV.     CONCLUSION

For the foregoing reasons, the Court should deny the petition (Doc. No. 1).

Dated: June 27, 2025                                        Respectfully submitted,

                                                            LEAH B. FOLEY
                                                            United States Attorney

                                        By:     /s/ Julian N. Canzoneri
                                                Julian N. Canzoneri
                                                Assistant U.S. Attorney
                                                U.S. Attorney's Office
                                                John Joseph Moakley U.S. Courthouse
                                                One Courthouse Way, Suite 9200
                                                Boston, Massachusetts 02210
                                                (617) 748-3170
                                                julian.canzoneri@usdoj.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that a true copy of the above document was served upon the attorneys of record by means of the Court's Electronic Case Filing system on June 27, 2025.

                                                  */s/ Julian N. Canzoneri*
                                                  Julian N. Canzoneri
                                                  Assistant U.S. Attorney