UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DAVID ANTONIO PEREZ-ESCOBAR ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ANTONE MONIZ, *et. al.* ) <br> ) <br> Respondents. ) <br> ) | Case No. 25-cv-11781-PBS |

**REPLY MEMORANDUM IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

Petitioner David Perez-Escobar has now been detained since June 18, 2025, following six years of full compliance with an Order of Supervision (OSUP). The government defends this detention on the basis of 8 U.S.C. § 1231(a)(6), but it has yet to furnish a valid reinstatement order in accordance with 8 C.F.R § 241.8, identify any ongoing removal efforts, or explain the sudden revocation of his supervised release relying instead only on a blanket Declaration from Assistant Field Office Director Keith M. Chan rather than any documentary support.

Critically, Mr. Perez-Escobar was paroled into the country in 2019, under the same administration that now seeks removal, after articulating a fear of return to El Salvador, and has been awaiting a reasonable fear interview ("RFI") ever since. See Exhibit 1. ICE now seeks to detain him indefinitely without having conducted the very interview that triggers his ability to seek protection from removal. That delay is of the government's own making.

This government relies on *Zadvydas v. Davis*, 533 U.S. 678 (2001) but the case is clear: detention beyond the removal period is only constitutional where removal is reasonably foreseeable. Here, it is not. In the absence of an RFI, no removal can proceed. The government's conclusory assertion of likelihood is belied by its own inaction. Moreover, the revocation of Mr. Perez-Escobar's OSUP failed to comply with the due process standards articulated in *Rombot v. Souza*, 296 F. Supp. 3d 383 (D. Mass. 2017), and *Van Nguyen v. Hyde*, 2025 U.S. Dist. LEXIS 117495 (D. Mass. June 20, 2025).

## I.    STATEMENT OF KEY FACTS

Mr. Perez-Escobar has lived in the United States under an OSUP since May of 2019, when he presented at the southern border with his partner and child and articulated a fear of return to El Salvador. He was not issued a Notice to Appear or placed in expedited removal. Instead, he was released by ICE into the interior, where he complied fully with all supervision requirements for over six years. He lived with his family in Somerville, worked legally, and raised two children, one of whom is a U.S. citizen. His spouse and other child have a pending asylum case. On June 18, 2025, after reporting for a scheduled check-in, he was arrested without warning.

The government now argues that his detention is authorized under 8 U.S.C. § 1231(a)(6), relying primarily on the declaration of Assistant Field Office Director Keith Chan with no documentary support. However, this declaration lacks several critical factual supports for its assertions while omitting key procedural steps necessary to justify detention:

1. Paragraph 6 states that Mr. Perez-Escobar was detained pursuant to §1231(a) with no particularized evidentiary support for why that provision of the law applies to him.

2. Paragraph 13 of the declaration states that Mr. Perez-Escobar was "processed as reinstatement" but does not assert that reinstatement actually occurred or that a Form I-871 was issued or served. There is no evidence in the record that a removal order was reinstated or that the procedures laid out in ICE's own procedures were followed, including the opportunity to contest his reinstatement.

3. Paragraph 14 acknowledges that ICE released him on an OSUP but does not deny that the release constituted a grant of parole. Importantly, if the petitioner was paroled, his removal order may not be reinstated. Further, he would not be deemed inadmissible.

4. Paragraph 15 notes that ICE forwarded his file for a reasonable fear interview in July 2019 but does not provide any reason for why it has not occurred, alleging only that "the Petitioner has not completed a reasonable fear interview."

5. Paragraph 16 confirms Mr. Perez-Escobar was arrested on June 18, 2025 but provides no justification or explanation for the decision after years of compliance. It does not cite any public safety or flight risk concerns and does not assert any pre-arrest process for the petitioner.

6. Paragraph 17 asserts that removal is "reasonably foreseeable" but contains no information as to efforts to schedule removal. There is also no explanation as to how removal is feasible when Mr. Perez-Escobar has not yet completed his RFI. Despite the declaration stating as much ("ICE served petitioner and his attorney with an Order of Supervision revocation letter"), Mr. Perez-Escobar's immigration attorney was not served with any revocation letter.

7. Paragraph 18 states only that an "informal interview" occurred the day after the arrest. The declaration does not claim that this was the RFI or that any procedural opportunity to challenge detention was given.

These are not minor gaps in the government's declaration. The lack of documentary support is telling. Under ICE's own regulations, particular procedures for reinstatement, parole, and revocation of supervisions are required and yet, the government has failed to demonstrate that any of them were followed.

## II. THE GOVERNMENT HAS NOT SHOWN A LIKELIHOOD OF REMOVAL

Under *Zadvydas*, post-order detention beyond six months is presumptively unreasonable unless the government shows a "significant likelihood of removal in the reasonably foreseeable future." 533 U.S. at 701. As the Court in *Van Nguyen* emphasized: "This case is not about ICE's authority to detain in the first place upon an issuance of a final order of removal as in *Zadvydas*. This case is about ICE's authority to *re-detain* [petitioner] after he was issued a final order of removal, detained, and subsequently released on an OSUP." *Supra* at 11. Further, under *Zadvydas,* this burden does not vanish simply because the six-month mark has not been reached. Immigration detention is civil and must "bear[] a reasonable relation to the purpose for which the individual [is] [detained]" so that it remains "nonpunitive in purpose and effect." *Zadvydas*, 533 U.S. at 690 (cleaned up); *see also Schall v. Martin*, 467 U.S. 253, 264 (1984) (finding detention must be a proportional and not excessive response to a legitimate state objective). Courts have routinely considered earlier release where the record demonstrates a lack of removal feasibility or government diligence. *See Van Nguyen*, 2025 U.S. Dist. LEXIS 117495, at 11–18.

The government has offered no evidence that it has initiated removal efforts for Mr. Perez-Escobar. There is no declaration indicating a request for travel documents. No consular

engagement. No airline coordination. No correspondence with Salvadoran authorities. And most critically: no reasonable fear interview has been scheduled, let alone completed. ICE's own regulation, 8 C.F.R. § 208.31, requires an RFI prior to referral for withholding-only proceedings. Without it, the removal order cannot be enforced. Additionally, the government fails to acknowledge that once a petitioner shows a lack of foreseeable removal, the burden shifts to ICE to rebut that showing. *Zadvydas*, 533 U.S. at 701. That burden has not been met.

The government cannot simultaneously rely on § 1231(a) while failing to take the basic procedural steps that would allow removal to occur. Detention under *Zadvydas* requires more than hollow assurances and unsupported declarations. *See Van Nguyen*, at 15–17 (holding ICE failed to meet its burden where it had not demonstrated any individualized showing that petitioner's removal was significantly likely in light of his specific circumstances).

## II.    ICE'S CHARACTERIZATIONS ARE MISLEADING AND INCOMPLETE

The government cites reinstatement under § 1231(a)(5) but has not produced the I-871 form that purportedly reinstates the 2003 removal order. Petitioner and his counsel have not been served with it. To date, no copy appears in the record. If the order was not formally reinstated, the detention framework collapses. The First Circuit has emphasized the importance of procedural formality in immigration custody determinations. *See Kong v. United States*, 62 F.4th 608, 619-620 (1st Cir. 2023) (decision to re-detain governed by own regulations requiring an individualized determination by ICE that, based on changed circumstances, removal has become significantly likely in the reasonably foreseeable future).

Moreover, Mr. Perez-Escobar's entry in May 2019 was functionally a parole under color of law: he requested entry, articulated a fear of return, was not denied entry and was immediately released on OSUP without issuance of a final removal order, which would preclude

reinstatement. His spouse was placed in removal proceedings, suggesting ICE treated them differently for procedural purposes. This factual ambiguity bears directly on the legal posture of his case and undermines the government's blanket invocation of § 1231.

### III. ICE'S REVOCATION OF SUPERVISION VIOLATED ITS OWN REGULATIONS AND DUE PROCESS

Under 8 C.F.R. § 241.4(l), ICE may revoke supervised release only upon a determination that: (1) the purpose of release has been served, and (2) circumstances justify re-detention. The regulation requires an informal interview and written notice. *See Rombot*, *supra* at 387–88. Here, ICE's June 19, 2025 "interview" occurred after arrest, without prior notice or opportunity to contest the basis. The supposed revocation letter contains only vague assertions that "the purpose of release has been served." It does not identify any violation, new risk, or even allege that removal is practically underway. The interview simply recites ICEs' position with no individualized reason for revocation. The revocation is procedurally identical to what was found unlawful in *Rombot*: an arrest at check-in, vague revocation justification, and no timely or meaningful interview. As the Court explained, such tactics violate the Constitution and ICE's own rules. *See Rombot*, id..

8 C.F.R. § 241.8 sets out the requirements of reinstatement. In order for reinstatement to occur, there must be an existing order of removal, the person must have departed while subject to the final order, and that person must then enter unlawfully. After this is satisfied and a form I-871 has been issued, there are also procedural requirements. They require DHS to have a copy of the final order, confirm the identity of the person, and confirm re-entry to be unlawful. After receiving a copy, the noncitizen then must have an opportunity to respond. None of this paperwork has been provided in the response by the Government. Most importantly, if Mr. Perez-Escobar was paroled, which the government does not directly refute, he did not enter

unlawfully and is therefore not subject to reinstatement. Where the government has not offered particularized evidence that the requirements from 8 C.F.R. §241 were followed, Mr. Perez-Escobar's detention is unlawful. *See Rombot*, id. at 388. (Detention unlawful based on ICE's violations of its own regulations).

### IV.    THE DELAY IN CONDUCTING AN RFI IS ATTRIBUTABLE SOLELY TO ICE

Mr. Perez-Escobar has, since July 2019, requested a reasonable fear interview. The government acknowledges that his file was forwarded to the Boston Asylum Office and yet no interview has been conducted. This failure lies with ICE and USCIS, not with the petitioner. The Supreme Court in *Zadvydas* made clear that when removal is delayed due to government inaction, indefinite detention becomes unconstitutional. 533 U.S. at 688. The government cannot fault Mr. Perez-Escobar for a delay that it has entirely orchestrated. *See Van Nguyen*, *supra* at 16–17 (finding detention unlawful where ICE failed to demonstrate that petitioner's repatriation was likely in light of individualized factors and failed to offer evidence of meaningful removal efforts specific to him).

### VI.    DETENTION IS NOT REASONABLY RELATED TO LEGITIMATE GOVERNMENTAL PURPOSE

Even assuming that Mr. Perez-Escobar could be detained under § 1231(a)(6), that detention must still bear a reasonable relation to one of the statute's two recognized purposes: preventing flight and protecting the public. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Neither purpose is served here. Petitioner was released in 2019 after expressing fear of return, has remained fully compliant with his supervision conditions for six years, has no disqualifying criminal record, and lives with his partner and two children, one of which is a U.S. citizen. The

government has not alleged dangerousness, has not suggested he violated his OSUP, and has not identified any act of noncompliance.

Moreover, the government's claim of statutory authority based on inadmissibility collapses in light of its failure to rebut the claim that Mr. Perez-Escobar was in fact paroled in 2019. Mr. Perez-Escobar presented at the border, requested entry, was not denied entry, was not placed in expedited removal and DHS released him on an OSUP after he articulated a fear of return. The only mechanism for release under these circumstances is parole. It has not produced any record to the contrary, nor any document showing that parole was ever formally revoked. If Petitioner was paroled, and the record supports that he was, then he is not inadmissible under § 1182(a)(6)(A)(i), and his detention under § 1231(a)(6) is unlawful.

## CONCLUSION

This is not a case of an uncooperative non-citizen avoiding removal. It is instead a man who complied for six years with all supervision requirements (even when faced with imminent risk of detention), requested an RFI in good faith, and was arrested without notice, without an interview, or any plan to remove him. For the above reasons, Mr. Perez-Escobar respectfully requests that the Court grant the petition and order his immediate release under appropriate conditions.

Respectfully submitted,
*Counsel for Petitioner*

*/s/Justin R. Dashner*
Justin R. Dashner, Esq.
BBO# 688786
90 Canal Street, Fourth Floor
Boston, MA 02114
(617) 871-9765
justin@dashnerlawfirm.com

Dated: July 7, 2025

<u>Certificate of Service</u>

I, the undersigned, do hereby certify that I have today served this motion on the Defendants by directing a copy through the electronic filing service provider.

7/7/2025

<u>/s/Justin R. Dashner</u>
Justin R. Dashner, Esq.
BBO# 688786
90 Canal Street, Fourth Floor
Boston, MA 02114
(617) 871-9765
Justin @dashnerlawfirm.com