**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| DAVID ANTONIO PEREZ-ESCOBAR | ) | |
| | ) | Case No. 25-cv-11781-PBS |
| Petitioner, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTONE MONIZ, *et. al.* | ) | |
| | ) | |
| Respondents. | ) | |
| _____ | ) | |

**SUPPLEMENTAL MEMORANDUM AND AFFIDAVIT IN SUPPORT OF**
**PETITION FOR WRIT OF HABEAS CORPUS**

**INTRODUCTION**

At the July 9, 2025 hearing on Mr. Perez-Escobar's petition for a writ of habeas corpus,

the Court requested that Petitioner submit an affidavit or proffer setting forth his version of the

events surrounding his June 2025 arrest, detention, and ICE's claimed compliance with

regulatory procedures. The Court also directed the government to produce all documents related

to Mr. Perez-Exobar's detention. See Dkt. 19.  In response, Petitioner respectfully submits the

attached sworn affidavit (Exhibit A) and supplements the record with additional argument

regarding ICE's failure to comply with the informal interview requirement under 8 C.F.R. §

241.4(l).

As detailed below, Mr. Perez-Escobar's sworn account demonstrates that ICE did not

conduct a meaningful informal interview, as required by regulation, and that the government's

declaration fails to rebut his version of events. He was not given notice of the reasons for his

detention, was not afforded the opportunity to respond to any allegations, and was not provided

with language access or an interpreter at the time of arrest. The ICE officer who met with him the next day merely informed him, through a brief phone interpretation, that he would be removed in four weeks and handed him untranslated English-language documents he could not read. This encounter does not satisfy the procedural protections required under § 241.4(l), nor does it provide the due process guaranteed by the Constitution. The government has offered little evidence to rebut Petitioner's specific account, relying instead on a blanket declaration from an official who was not present at the relevant events and on documents that were turned over to counsel a month after the initial detention. See Dkt. 21. These documents offer little clarity or specificity as to Petitioner's detention. The Court should credit Petitioner's detailed, sworn statement and order his immediate release. See Exhibit 1.

## I.     THE JUNE 19 ENCOUNTER DID NOT SATISFY THE "INFORMAL INTERVIEW" REQUIREMENT OF 8 C.F.R. § 241.4(l), AND THE CHAN DECLARATION LACKS THE SPECIFICITY TO REBUT PETITIONER'S ACCOUNT

"Freedom from imprisonment -- from government custody, detention, or other forms of physical restraint -- lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 695, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001) (citing Foucha v. Louisiana, 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992)). The Supreme Court has repeatedly affirmed that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." United States v. Salerno, 481 U.S. 739, 755, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); see alsoFoucha, 504 U.S. at 80, 112 S.Ct. 1780 ("We have always been careful not to minimize the importance and fundamental nature of the individual's right to liberty."). For this reason, "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protections." Addington, 441 U.S. at 425, 99 S.Ct. 1804 (emphasis added). Hernandez-Lara v. Lyons, 10 F.4th 19, 28 (1st Cir. 2021). The

government contends that the brief encounter between Mr. Perez-Escobar and an ICE official on June 19, 2025 satisfies the notice and "informal interview" required by 8 C.F.R. § 241.4(l)(1) for Mr. Perez-Escobar's detention. That regulation requires ICE, after revoking supervised release, to inform the detainee of the "reasons for revocation of his release or parole" and to conduct an informal interview "promptly" to provide the detainee "an opportunity to respond to the reasons for revocation." 8 C.F.R. § 241.4(l)(1).

Mr. Perez-Escobar's affidavit demonstrates that this never happened in any meaningful way. Upon his detention, he is in a custodial setting with no interpreter present. His Spanish-speaking neighbor was excluded and no attorney was present nor was he given any reason for his detention. The next day, a follow-up occurred where he was given documents that he could not read. He was not asked any questions nor given any reason for his detention. He was unable to contest the detention in any way. The only information he was given was through an interpreter on the phone telling him he would be removed in four weeks. There was no further discussion regarding his compliance history, family situation, or legal claims. Mr. Perez-Escobar's affidavit also describes learning the contents of the documents he received on July 14, 2025, nearly a month after his detention through his attorneys. Despite paperwork suggesting that he said during the supposed informal interview "I fear returning to El Salvador," Mr. Perez-Escobar's affidavit makes it clear that he never said anything at this interview and considering he cannot read or write in English, he certainly did not write it either. These same documents were first turned over to counsel by the government on July 18, 2025. See Dkt. 21, Exhibit 5 and 6.

By contrast, the government relies on a declaration from Assistant Field Office Director Keith Chan, who was not present for the encounter and whose affidavit lacks detail. See Dkt. 15.

Mr. Chan's Paragraph 18 simply asserts, in conclusory fashion, that an "informal interview" occurred. The declaration offers no description of the questions posed, no summary of what Mr. Perez-Escobar was told or asked, and no indication that he was given an opportunity to respond to the alleged grounds for revocation. It does not even claim that a Spanish-language interpreter was available. It does not describe the papers turned over on July 18, 2025 nor detail their contents. The declaration by Mr. Chan is nothing more than a recitation of Mr. Perez-Escobar's file history and a description of boiler plate language included in every case in which an OSUP is revoked.

Inferring that the government seeks to rely instead on the Notice of Revocation and the Alien Informal Interview form to justify Mr. Perez-Escobar's detention, very little changes. The Notice of Revocation provided appears to be nothing more than a boiler plate notice. See Dkt. 21, Exhibit 5. Nothing in the notice provides any justification for removal as required by ICE's own regulations. The only language speaking to revocation says "The purpose of your release has been served and it is appropriate to enforce the removal order." See Dkt. 21, Exhibit 5. They identify no change of circumstance from the six years that he spent under supervision. They provide no justification for their failure to provide a Reasonable Fear Interview. As to the Alien Informal Interview form, the provided information shows only that an interviewing officer signed it and wrote on it. See Dkt. 21, Exhibit 6. Importantly, there is no certification that it was translated, no signature from Mr. Perez-Escobar, and only a short sentence written in English. It is further noted that absent from the record are any written statements or documents from Mr. Perez Escobar in response to the revocation of his OSUP and his detention. Rather, in his sworn affidavit, Mr. Perez-Escobar says that there was no interpreter to help him understand what the officers were trying to communicate to him and that he made no statement. This document does

nothing to ameliorate the Government's failure to provide a meaningful interview to respond to the reasons for revocation. The process due to Mr. Perez-Escobar by ICE's own regulations, was not followed.

This Court should give greater weight to Mr. Perez-Escobar's specific, sworn, firsthand account over a vague, secondhand declaration that fails to describe how ICE complied with its own regulation. See Rombot v. Souza, 296 F. Supp. 3d 383, 388 (D. Mass. 2017); cf. Kong v. United States, 62 F.4th 608, 619–20 (1st Cir. 2023). The documents provided on July 18, 2025 are in no way dispositive. They continue to offer no reason for detention and provide little to contrast Mr. Escobar-Perez's sworn affidavit. It is clear that the minimal procedure he received did not satisfy the requirements of § 241.4(l), much less the constitutional baseline of due process. Even if ICE had conducted a procedurally valid informal interview, the government has failed to demonstrate any changed circumstances under 8 CFR 241.13(h)(2) or provide lawful authority under § 1231. Revocation alone is not a basis for detention, rather, it must be tethered to actual statutory authority, applied in accordance with regulation. Here, that foundation is missing.

## CONCLUSION

Mr. Perez-Escobar's sworn affidavit demonstrates what the government's vague declaration and documentation does not: ICE conducted no meaningful interview, gave no opportunity to respond, and provided no process. The government's procedural shortcut cannot justify prolonged detention. Mr. Perez-Escobar respectfully renews his request for immediate release.

Respectfully submitted,

*Counsel for Petitioner*

_/s/Justin R. Dashner_
Justin R. Dashner, Esq.
BBO# 688786
90 Canal Street
Fourth Floor
Boston, MA 02114
(617) 871-9765
justin@dashnerlawfirm.com

_/s/ Annery Miranda_
Annery Miranda, Esq.
BBO#712373
Greater Boston Legal Services
197 Friend Street, 8th Floor
Boston, MA 02114
(617) 669-2440
AMiranda@gbls.com

Dated: July 18, 2025

Certificate of Service

I, the undersigned, do hereby certify that I have today served this motion on the Defendants by directing a copy through the electronic filing service provider.

7/18/2025

_/s/Justin R. Dashner_
Justin R. Dashner, Esq.
BBO# 688786
90 Canal Street, Fourth Floor
Boston, MA 02114
(617) 871-9765
Justin @dashnerlawfirm.com